IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.                                                                                      20-CR-199-V

DAVID CALAICOVO,

        Defendant.

---

## GOVERNMENT'S SENTENCING MEMORANDUM

Whatever his reasons for possessing child pornography, David Calaicovo's case is extraordinary in one important respect: Calaicovo was entrusted with the well-being of children similar in age to those whose sexual abuse he watched and collected. This is not, then, a child pornography case in which the Guideline range is inconsistent with what 18 U.S.C. § 3553(a) requires. To the contrary, the uniquely troubling facts of this case warrant a Guideline sentence of imprisonment.

For nearly one year before he retired (PSR ¶ 62), Calaicovo accessed and viewed child pornography—some of which showed children being tortured, *id.* ¶ 33—while simultaneously working as a school psychologist. PSR ¶ 133. Calaicovo's school district, as well as countless parents, trusted him to work with children in need. But Calaicovo abused that trust: he spent his working day with children while spending his free time being stimulated, PSR ¶ 62, by "repe[ating] . . . the[] abuse" memorialized in his child pornography collection. Pub. L. 109-248, Title V, § 501(2)(D), 120 Stat. 623 (July 27, 2006), reprinted in statutory note following 18 U.S.C. § 2251 (Congress's finding that "[e]very instance of viewing images of child

1

pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse").

These facts show that Calaicovo's conduct is categorically different than that of many defendants who possess child pornography. After all, "'[t]he care of children is a sacred trust.'" *New York v. Ferber*, 458 U.S. 747, 757 (1982) (quoting 1977 N.Y. Laws, ch. 910, § 1). Teachers and other school officials occupy a unique position in the community: they are entrusted with the custody, care, and development of young children; they are viewed as authority figures by the children they teach; and they have access to children for hours at a time. Educators who share Calaicovo's sexual interest in children therefore have a unique ability to act on their sexual impulses. A Guideline sentence sends a message, however, that there are serious consequences for even possessing images and videos depicting the sexual abuse of children, much less acting on those impulses. *See* 18 U.S.C. § 3553(a)(2)(B).

To be sure, Calaicovo is correct that there is no evidence that he engaged in inappropriate behavior with a child. But that does not diminish the seriousness of his conduct, and it surely does not assuage the concern of parents who learned that a person they trusted spent his free time viewing other children as sexual objects. It also ignores the fact that, for someone with daily access to vulnerable children, it was surely all too easy to blur the lines between what Calaicovo did at work and what he viewed on the internet. After all, one of the photos that triggered this investigation showed a nude pre-pubescent child "with her legs spread open . . . exposing her genitals" while she was in "what appears to be a classroom setting" with books, a chalkboard, and school supplies. PSR ¶ 21.

Together, these facts show why the Court should not exercise its authority to vary downwards. Although Calaicovo's Guidelines calculation includes several "run-of-the mill"

enhancements, this is not a case in which Guideline § 2G2.2 "lead[s] to [an] unreasonable sentence[] that [is] inconsistent with what § 3553 requires." *United States v. Jenkins*, 854 F.3d 181, 188 (2d Cir. 2017) (quoting *United States v. Dorvee*, 616 F.3d 174, 184, 186 (2d Cir. 2010)). A Guideline sentence easily satisfies § 3553(a) by demonstrating the unique seriousness of Calaicovo's possession offense, while also deterring other teachers who share Calaicovo's sexual interest in children. Calaicovo's position in the community surely makes him different than other possession defendants who come before the Court, many of whom likely receive downward variances. To sentence Calaicovo and those defendants similarly would not adequately reflect Calaicovo's relative culpability.

There is no question that Calaicovo appears to have led an otherwise commendable life. And the government does not doubt that his crime appears to have stemmed from untreated mental health issues that he is endeavoring to treat. The Court should, of course, consider these facts in imposing sentence. But § 3553(a)(1) requires the Court to fashion a sentence that considers both "the offense" and "the defendant." Calaicovo's otherwise-good background cannot, then, be viewed in a vacuum; it must be considered alongside the unquestionable seriousness of his offense. The Court's sentence must therefore account for the uniquely dangerous position Calaicovo placed himself in, as well as his severe abuse of trust. A Guideline sentence accomplishes those goals.

DATED:      Buffalo, New York, July 12, 2022.

Respectfully submitted,

TRINI E. ROSS
United States Attorney

By:     ***CHARLES M. KRULY***
CHARLES M. KRULY
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Ave.
Buffalo, New York 14202
(716) 843-5838
Charles.kruly@usdoj.gov

4